179 P.2d 442

BRAZEE v. MORRIS.

No. 4908.

Supreme Court of Arizona.

April 14, 1947.

Theodore G. McKesson and Carl W. Divelbiss, both of Phoenix, for appellant.

Lloyd J. Andrews and John M. Levy, both of Phoenix, for appellee

UDALL, Judge.

This action was brought by Robert H. Brazee against George T. Morris for the specific performance of an option agreement to convey certain lots in the Collins Addition to the City of Phoenix. From a judgment for the defendant and a denial of his motion for a new trial, the plaintiff appeals. The parties will be referred to as they were designated in the trial court.

It is necessary first to consider the sufficiency of the pleadings. The plaintiff alleged that for a valuable consideration the defendant had given him an option to purchase the lots in question which option had been reduced to writing and bore the date January 14, 1943. The defendant by his answer denied the execution of the instrument and for a further separate defense alleged: "* * * that if the name of

the defendant George T. Morris, also known as G. T. Morris, appears on a purported option in writing to the plaintiff, Robert H. Brazee, that said signature was obtained by fraud and misrepresentations on the part of the plaintiff with no consideration whatsoever."

The plaintiff assigns as error the admission of any evidence by the trial court relative to fraud for the reason that the defendant had failed to allege with particularity the circumstances constituting fraud.

■ Rule 9(b) of the Rules of Civil Procedure, section 21-414, A.C.A. 1939, states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. * * *" This is clearly an exception to the general rule that "a party shall state in short and plain terms his defenses to each claim". Rule 8(b), Rules of Civil Procedure, section 21-405, A.C.A. 1939; Reed v. Turner, D.C., 2 F.R.D. 12; Curacao Trading Co., Inc., v. William Stake & Co., D.C., 2 F.R.D. 308; United States v. Hartmann, D.C., 2 F.R.D. 477; Shultz et al. v. Manufacturers & Traders Trust Co., D.C., 1 F.R.D. 53.

■ The true intendment of this rule relating to the pleading of fraud is well set out in Barnes v. Boyd, D.C., 8 F.Supp. 584, 592, affirmed 4 Cir., 73 F.2d 910: "* * * The mere averment that something is 'fraudulent' is not sufficient. * * * the bill must set forth such acts done or omitted * * *".

Applying these principles to the instant factual situation, however, has not the defendant by his pleadings set forth all the circumstances of fraud or misrepresentation of which he is cognizant? If he does not know how his signature got on the document, neither common sense nor any rules of pleading known to this court would require him to state with particularity how it got there. Evidently this was the view taken by the learned judge for when Mr. Morris took the stand on his own behalf (and as the defense's sole witness) he was, as a preliminary matter, interrogated as to his previous friendly dealings with the plaintiff. Plaintiff's counsel objected stating that this line of questioning was immaterial and outside the issues as fraud had not been sufficiently alleged, at which point the following enlightening colloquy occurred between court and counsel:

The court: "What have you to say, Mr. Andrews? This says it must be alleged with particularity."

Mr. Andrews: "He says he didn't sign that document. How can we say with particularity how it (the signature) got there?"

Mr. McKesson: "Then it is (not) a question of fraud. It is just that he didn't sign it. So far as not signing it and the consideration, that is all right."

The court: "I understood he alleges he didn't sign it, but if it got on there it was through fraud. I will permit you to show the relationship of the parties."

294

Finally, the plaintiff could in nowise be prejudiced by the defendant's failure to more particularly plead the facts of fraud in this case for assuming the defendant's allegations to be true, only the plaintiff is in possession of the facts concerning how the fraud was accomplished. But even if the defendant was cognizant of the facts surrounding the fraud, still, as the case was tried wholly upon the issue of the genuineness of defendant's signature the plaintiff was not prejudiced. That this was, in fact, the "issue of the trial" is evidenced by the only interrogatory submitted to the jury which read: "Did the defendant G. T. Morris, sign the option agreement dated January 14, 1943, that is plaintiff's exhibit "D" in evidence?" The record does not disclose that either the plaintiff or defendant requested the submission of any other interrogatories, and we doubt whether, under the proof adduced, it would have been proper so to do. It was upon the jury's negative answer to this question that the court's judgment was based. We hold, therefore, that under the peculiar circumstances of this case the defendant's answer was legally sufficient, and that the plaintiff was in nowise prejudiced by the failure or inability of the defendant to plead his alternative defense of fraud with more particularity.

As stated before, this legal controversy revolved almost entirely around the issue as to the genuineness of defendant's signature on the option agreement. To aid in establishing this vital point, plaintiff called W. M. Duncan, a criminologist, to testify on his behalf. After being qualified by counsel as an expert in the examination of questioned documents, Mr. Duncan testified that the signature appearing upon the option agreement was positively written by defendant. He stated that the basis for his conclusion was a study of the comparison of the signatures upon the option agreement with other signatures of defendant which were admittedly genuine. Upon cross examination, to impeach the witness, the following testimony was given:

"Q. You testified in a will contest here about two months ago, didn't you? Do you recall that case? A. I have testified in many cases.

"Q. Nick Thompson case. A. Yes.

"Mr. McKesson: I object to that as improper cross-examination.

"Mr. Andrews: I have a right to question him on cases he has testified in.

"The court: Yes, counsel may interrogate him on cases he has testified in. Overruled.

"Mr. Andrews: You testified in that case, is that right? A. Yes.

"Q. And the trial lasted some three weeks in this court? A. It did.

"Q. And the jury promptly found against you?

"Mr. McKesson: I object to that as having nothing to do with this case.

"The court: It has nothing to do with this case, but whether or not an expert's views have been followed or not, you may interrogate him cn how a case came out."

(Discussion between court and counsel)

"The court: Objection overruled.

"Mr. Andrews: And the jury in that case very promptly found against you and your opinion, didn't they? A. Not very promptly, no.

"Q. They did find against you? A. That case is completely opened again.

"Mr. Andrews: Answer the question.

"The court: Yes, answer the question. Did the jury find contrary to your opinion? A. That is right."

▮▮ The appellant alleges as his second assignment of error: "That the trial court erred in permitting the witness, M. W. Duncan to be cross-examined relative to his testimony in another case, and that in such other case the jury found the issues contrary to the testimony of said witness." We believe this assignment is well taken. While we appreciate the fact that no fixed rule can be stated defining the boundaries of irrelevant inquiry which would be just or safe in universal application, legal precedent has given us some help in certain areas thereof. So, though wide latitude is permitted in the cross-examination of a witness, and the courts are particularly liberal in allowing full and complete examination of an expert witness, courts generally do not permit eliciting from an expert the fact that in previous totally unrelated cases the jury found against the litigant in whose favor the expert had testified. Southern R. Co. v. Parham, 10 Ga. App. 531, 73 S.E. 763; Missouri, K. & T. Railway Co. v. Bailey, 53 Tex.Civ.App. 295, 115 S.W. 601; In re Gunderson's Estate, 174 Wash. 462, 24 P.2d 1070; State v. Lowe, 50 Idaho 96, 294 P. 339; State ex rel. State Highway Comm. v. Hoffmann, Mo.App., 132 S.W.2d 27; Hart v. Kansas City Public Service Co., Mo.App., 142 S. W.2d 348.

The bases for the exclusion of such testimony are interrelated. First, the fact that a jury in a previous and totally unrelated case found against the litigant for whom the expert testified, may or may not be an indication of the expert's skill, or the fact that he made a mistake. The most that can be said is that perhaps there exists a presumption that he made an error in the previous case, and that, only if the case actually turned upon the issue to which he had directed his testimony. To extend this doubtful presumption by laying another presumption atop it; to wit, that if the expert made a mistake in a prior case, it is likely that he also made a mistake in the instant case, seems to be going entirely too far, and runs afoul of the rule against basing a presumption upon a presumption. New York Life Ins. Co. v. Mc-Neely, 52 Ariz. 181, 79 P.2d 948. In addition to this difficulty, such attempted im-

peachment and its rebuttal involves the raising of so many collateral issues that not only would an undue amount of time be consumed, but the possibility of confusing any jury as to the real issues of the case is great.

 In this case the inquiry as to the outcome of the Nick Thompson will contest case and the inference that the jury there found against the testimony of the witness, Duncan, not only served no useful purpose, but was highly prejudicial in that it served improperly to discredit the witness and to put in issue matters having no bearing whatsoever upon the issues of this case. "* * * Where the only effect of the cross-examination of a witness on collateral matters would be to prejudice the minds of the jurors, it should not be permitted. * * *" 70 C.J., Witnesses, § 809, p. 641-642.

 We hold that the admission of this testimony was such an abuse of discretion on the part of the trial court as to constitute reversible error.

In view of the fact that we are not prepared to say that substantial justice has been done in spite of the admission of prejudicial testimony, and the case must be sent back to the lower court for retrial for this reason, we feel that it is neither necessary nor proper for us to pass upon the plaintiff's other assignments of error which have to do with the sufficiency of the evidence to substantiate the verdict; the refusal of the trial court to grant his motions for an instructed verdict; for judgment notwithstanding the answer given to the interrogatory; and for a new trial.

The judgment is reversed and the cause remanded for a new trial.

STANFORD, C. J., and LaPRADE, J., concur.