[Civ. No. 17689. First Dist., Div. Two. Mar. 6, 1958.]

LEO TELLEFSEN, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation) et al., Appellants.

Donahue, Richards & Gallagher for Appellants.

T. G. Fitzgerald for Respondent.

DRAPER, J.—Plaintiff sought damages for injuries suffered while he was a passenger on a train of defendant corporation. At the end of the line in Berkeley, the train struck the terminal bulkhead. The sudden stop threw plaintiff, in a sitting position, into the seat in front of him. He "had the feeling of being propelled back and forth between the seats," and "ended up between the seats on the floor." Judgment was entered upon jury verdict for $62,282.69 against defendant corporation and its motorman. Defendants' motion for new trial was denied, and they appeal.

■ The principal injury claimed by respondent is atrophy of a portion of the brain. Appellants contend that the evidence is insufficient to establish a causal connection between the accident and this condition. They argue that respondent's principal medical witness based his testimony that the cerebral atrophy resulted from this accident upon the assumption that respondent suffered a blow to the head, whereas, they say, respondent's testimony does not support the view that he received such a blow. But we are required to view the evidence in the light most favorable to the verdict (*Jordan* v. *Guerra*, 23 Cal.2d 469, 476 [144 P.2d 349] ; 4 Cal.Jur.2d 449). So viewed, the record supports neither of appellants' premises. The neurosurgeon testified that such atrophy could result from "shaking or a blow." And respondent's testimony on deposition, relied upon by appellants to negative the occurrence of a blow to the head, does not have this effect. Rather, respondent testified that he was not "aware of" striking his head. In view of the force with which he was thrown about in the train, as well as his testimony that he was stunned, the jurors could reasonably conclude that in fact his head forcibly struck the seat ahead of him, as he testified at trial. At most, there is a conflict of evidence, and the resolution of conflicts is for the jury, rather than the appellate court.

■ The neurosurgeon called by respondent testified on direct that he was on the staffs of two hospitals. On cross-examination, he was asked "have you attempted to get on the staff" of another hospital, and answered "No, not recently." As part of their case, appellants called the business manager of the latter hospital, and offered to prove through him that the doctor had applied for such appointment and

was not accepted. Respondent's objection to this offer was sustained, and appellants urge this ruling as error. The offer was properly rejected. Appellants now suggest that in some way the doctor's failure to gain admission to this staff reflects upon his qualifications as an expert. To the extent that the offered testimony might have such effect, it would be obvious hearsay. To the extent that the testimony was competent, it was wholly collateral to any issue in the case. The cross-examination as to membership on this staff did not go to the doctor's credibility, as he had not claimed such membership on direct. At most, the cross-examination was designed to elicit an answer which could be contradicted.

But one who cross-examines upon irrelevant matters solely for the purpose of eliciting something to be contradicted is bound by the answer (*Trabing* v. *California Navigation etc. Co.*, 121 Cal. 137, 145 [53 P. 644]; *Estate of Gird*, 157 Cal. 534, 548 [108 P. 499, 137 Am.St.Rep. 131]; *Sales* v. *Bacigalupi*, 47 Cal.App.2d 82, 87 [117 P.2d 399]; 27 Cal.Jur. 107).

Appellants claim prejudicial misconduct by respondent's attorney. In *voir dire* of the jury, respondent's counsel asked one juror:

"The fact we are in court today, Mr. Rozzell, shows that this case has not been settled prior to trial. Does the fact that myself and my adversary in the case have not succeeded in settling the case, does that have any influence whatsoever upon your thinking with respect to the case?"

Two weeks later, in his opening argument to the jury, respondent's counsel said:

"The cause of action for personal injuries is a part of our social organization. It is a part of the scheme of security that has been developed over many years in this country. It is an integral part. Each time you buy a bunch of carrots at seven cents, your pay in some way reflects itself in this scheme in the same way that seven cent bunch of carrots is in some ways reflected in the fire insurance the grocer carries on his building and the social security he has to pay to his employees. This is something to which, if Mr. Tellefsen under the rules is entitled to recover, he is entitled to recover in the same way as he would be entitled to recover on an accident insurance policy that he has been paying two bits a week into."

In each instance the court, promptly upon objection, fully and carefully admonished the jury to disregard the objectionable matter. In each instance, however, the court denied appellants' motion for mistrial. The implication that settle-

ment had been attempted and the suggestion that liability could be imposed without fault were improper. However, the prompt and clear admonition of the court removed the prejudicial effect of the errors (*Downey* v. *Bay Cities Transit Co.*, 94 Cal.App.2d 373 [210 P.2d 713]). Only in extreme cases will such an admonition fail to remove the effect of counsel's conduct (*Tingley* v. *Times Mirror Co.*, 151 Cal. 1, 23 [89 P. 1097]). Here the misconduct does not appear to be of that "wilful or persistent nature" which constitutes reversible error (*Willoughby* v. *Zylstra*, 5 Cal.App.2d 297, 302 [42 P.2d 685]). In our case, appellants' motion for new trial was denied, and we must give weight to the trial judge's view that the jury was not prejudicially influenced (*Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621, 629 [286 P. 456]; *Music* v. *Southern Pac. Co.*, 91 Cal.App.2d 93, 98 [204 P.2d 422]).

Plaintiff concedes that the doctrine of res ipsa loquitur applies, but urges error in the form of the instruction. However, the instruction was in precisely the form modified and approved by our Supreme Court (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432 [260 P.2d 63]). █ In a later instruction, the court said "If you find from all of the evidence, including the inference of negligence which arises from the happening of the accident, as you have been instructed," that the conductor was negligent, then the verdict should be against both conductor and corporation. Appellants argue that this amounted to an instruction that the accident did occur as claimed by respondent. However, the instruction on res ipsa loquitur had clearly specified that the doctrine should apply only if the jury found that, as plaintiff claimed, the train stopped abruptly and that plaintiff was injured by that accidental occurrence. The later reference to this instruction could have been phrased more aptly. However, this reference to the res ipsa inference was qualified by the phrase "as you have been instructed," and we are satisfied that the jury was not misled.

█ Appellants complain that the court permitted respondent to amend his complaint to allege negligent "maintenance and management," and then instructed that appellant corporation could be held liable even if appellant motorman were not. On the facts of this case, it is difficult to find error in the instruction. In any event, there was no prejudicial effect, since the jury held both defendants liable. Appellants assert other errors in the instructions, but these

assignments are without substance. The instructions, read as a whole, are fair and accurate.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied April 4, 1958, and appellants' petition for a hearing by the Supreme Court was denied April 30, 1958.