**LYNN v. HAECKER et al.**

No. 12313.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 17, 1951.

Rehearing Denied Jan. 2, 1952.

540

Joe Dickson and Morriss, Morriss, Boatwright & Lewis, all of San Antonio, for appellant.

Clifton & Tynan, San Antonio, for appellees.

NORVELL, Justice.

This suit was brought by Christiana Lynn, acting through Jennie Rivas as next friend, against Ellen Evanson Haecker, seeking to set aside two deeds executed by Mrs. Lynn in 1943. The jury refused to find from a preponderance of the evidence, (1) that Mrs. Lynn did not have sufficient mental capacity to understand the nature and subject of the deeds and the consequences of her act in signing the same; (2) that said deeds were executed as a result of undue influence brought to bear upon her by Mrs. Haecker; (3) that Mrs. Lynn intended that the instruments signed by her were to be wills instead of deeds, (4) or that Mrs. Haecker had represented to her that such instruments were wills instead of deeds.

Appellant presents five points. By the fourth and fifth points it is asserted that the jury's answers to Special Issues Nos. 1 and 2, relating to mental capacity and undue influence are against the overwhelming preponderance of the evidence.

Mrs. Haecker is a daughter of Mrs. Rivas by a former marriage. She was born in Sweden and remained in that country with her paternal grandparents when her mother immigrated to America. In 1925, the appellee, then Ellen Evanson, came to this country to rejoin her mother. She was then nineteen years of age and did not speak the English language. She came to a cafe in San Antonio operated by her mother but then in charge of Mrs. Christiana Lynn because Mrs. Rivas was ill. It seems that there was some estrangement between Mrs. Lynn and Mrs. Rivas, who were sisters, by reason of Mrs. Rivas' second marriage, and Ellen Evanson lived with her aunt for about two years before she married and seems to have maintained a closer relationship with her aunt than with her mother.

Mrs. Haecker testified that she did not know that Mrs. Lynn had executed the 1943 deeds until Mrs. Lynn informed her of the fact. While she was contradicted upon this point, we must take her version as true in view of the jury's findings and the judgment. Mrs. Haecker also testified that it was her understanding that Mrs. Lynn was to have the income from the property as long as she lived and that she had received such income. The 1943 deeds were recorded in 1946. Mrs. Haecker testified with reference to an occurrence with her mother and aunt in 1947. Mr. Rivas was then dead and the two sisters were apparently upon better terms than they had been theretofore. Neither Mrs. Rivas nor Mrs. Lynn testified in the case and it is inferable that Mrs. Lynn was physically unable to do so. Mrs. Haecker's version of what occurred upon this occasion is consequently the only one before us and it is not wholly clear. She said her aunt and mother were angry and told her that she "had done something awfully bad; that everything was wrong," and that the originals of the deeds and a will made by Mrs. Haecker were torn into pieces and left upon the table. Suit for cancellation was filed in December of 1950, at which time Mrs. Lynn was approximately 80 years of age.

The pertinent inquiry relates to Mrs. Lynn's mental condition around June 2, 1943. There is testimony indicating that Mrs. Lynn's mind was in a weakened condition at that time, but such evidence was not uncontradicted. Certain witnesses testified that she was a competent and alert business woman. While one witness testified that Mrs. Haecker was present before and at the

time the deeds were executed and insisted upon deeds being prepared rather than a will, Mrs. Haecker's testimony was directly to the contrary. The record therefore discloses a conflict of testimony upon both issues submitted to the jury, i. e., mental capacity and undue influence. The jury's findings are consequently binding upon us. 3 B Tex.Jur. 445, Appeal and Error, §§ 938, 939. Appellant's fourth and fifth points are overruled.

■ By the first point, it is contended that a judgment in favor of Mrs. Haecker is precluded by an oral "judicial admission" on her part. The statement relied upon was one made by Mrs. Haecker in her deposition taken on September 30, 1950, viz:

"Q. And did you not tell her that these instruments were just wills and that you would not have the property until she died? A. That is correct."

Upon the trial of the case, Mrs. Haecker testified fully as to her relationship with Mrs. Lynn. She stated that she had no knowledge of the deeds prior to their execution, and she did not know the difference between a deed and a will at the time. From Mrs. Haecker's testimony, it appears that it was her understanding or desire at least that Mrs. Lynn was to have all the income from the property until she died, and that she, Mrs. Haecker, had never received any part of the income therefrom. The above quoted question and answer elicited upon cross-examination does not bar Mrs. Haecker's recovery of judgment in this case. We have recently written at length with reference to so-called oral "judicial admissions." See, United States Fidelity and Guaranty Company v. Carr, Tex. Civ.App., 242 S.W.2d 224, wr. ref. Other cases dealing with the subject, cited in the briefs, are: Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569, which cites numerous authorities; J. R. Watkins Co. v. King, Tex.Civ. App., 83 S.W.2d 405; Annotation, 169 A.L. R. 798; 9 Wigmore on Evidence (3d Ed.), 589, § 2590. Appellant's first point is overruled.

■ By her second point, appellant contends that the trial court erred in admitting in evidence a copy of a will executed by Mrs. Haecker. The objection was based upon the contention that the will was not then effective in that Mrs. Haecker was still alive and could "change it as any time before she breathes her last breath." The court admitted the instrument for the purpose of showing "the relationship that existed between this witness (Mrs. Haecker) and her aunt at the time." The trial court's ruling was correct. Fraud and undue influence were charged against Mrs. Haecker in securing the execution of the deeds involved. The relationship between the aunt and niece was a proper subject of inquiry. The will admitted in evidence designated certain property as separate and specifically described those tracts of land conveyed in the disputed deeds. All separate property was devised to the aunt, Mrs. Christiana Lynn. Mrs. Haecker, as above pointed out, testified that her aunt was receiving all the income from the property and proof that an arrangement by will had been made to reinvest title in Mrs. Lynn in the event Mrs. Haecker should predecease her has some tendency to contradict the allegations of fraud and undue influence. Appellant's second point is overruled.

■ By the third point it is contended that the court made a remark prejudicial to appellant in the presence of the jury. Appellant had in attendance a medical doctor that she intended to use as an expert witness. Evidently the doctor had been in the courtroom for some time waiting upon the completion of the examination of another witness. After this examination had been concluded, the following ensued, as disclosed by the statement of facts:

Counsel for plaintiff (appellant): "We would like to call Dr. Howerton.

"The Court: You had better put him on now so he doesn't have to stay much longer or, if he does, all his patients might get well.

"Counsel: We object to that as being a comment upon the weight of his testimony.

"The Court: I was only joking. I will instruct the jury not to consider that remark."

The remark complained of was not a comment on the weight of Dr. Howerton's testimony. It was obviously made in a humorous vein and no one hearing it would conclude that the judge intended to infer that opinions thereafter expressed by the doctor should not be given careful consideration. Appellant's third point is overruled.

All of appellant's points have been considered. No reversible error appearing, the judgment appealed from is affirmed.

## On Motion for Rehearing

Upon rehearing, it is insisted that we erred in refusing to hold that judgment should have gone against Mrs. Haecker on an asserted "judicial admission." Particular complaint is made of the fact that in our opinion only one question propounded to Mrs. Haecker is set forth together with her answer thereto. Appellant reminds us that three pages of the Q and A are set forth in her brief. While we attempted to shorten the opinion as much as possible, as enjoined by Rule 452, Texas Rules of Civil Procedure, we do not wish to leave an erroneous impression of the record.

In her deposition Mrs. Haecker testified that at the time the deeds in question were executed (1943), Mrs. Lynn placed a great deal of confidence in her and "relied on her just like a daughter" and trusted her in everything she did; that Mrs. Lynn had complete confidence in her and she was entrusted with various business affairs. The Q. and A. as set forth in appellant's brief is as follows:

"Q. And you and Mrs. Lynn had discussed the making of a will? A. That is right.

"Q. And she said she would make a will to you? A. That is right. * * *

"Q. You told Senator Ridgeway you wanted a deed prepared? A. That is right. * * *

"Q. Then you are more or less considering these deeds as a will? A. That is correct. * * *

"Q. And did you not tell her that these instruments were just wills and that you would not have the property until she died? A. That is correct.

"Q. You told her you could not get the property until she died and the instruments she signed were just like a will? A. She asked me if they were and I did.

"Q. You did tell your Aunt Christine that these instruments she signed in June, 1943, were just like a will and you would not claim the property until she died? A. That is correct and I have not done it either.

"Q. Did you ever tell your Aunt Christine that these instruments she signed in June, 1943, were deeds to you to this property right now? A. I do not ever recall I did.

"Q. You do not recall that you did? A. No."

The above questions and answers represent selections taken from about seven pages of the statement of facts.

Upon the trial of the case, Mrs. Haecker testified that Mrs. Lynn had executed the deeds before she informed the witness of that fact. The testimony was as follows: "About the year 1943 she (Mrs. Lynn) was sick and one Sunday my husband and I went out there and she told me she had made a will and deed for me. * * * She told me that she had made a will and a deed for me. Of course, at that time I didn't know the difference between a will and deed and she told me everything she had was for me and for me only."

From the versions given by Mrs. Haecker, the most that can be said is that the two were conflicting in certain particulars, that is, she said one thing upon her cross-examination when her deposition was taken and said another thing upon her direct examination when she appeared as a witness upon the trial. Whether or not a jury could reconcile the apparently conflicting statements is somewhat beside the point. It could properly credit either version. It is apparent that the statement relied upon as a "judicial admission" was not clear and unequivocal. "If the statement merely contradicts some other portion of the party's testimony, conclusive effect can-

not be given thereto, but a fact issue is presented for the determination of the jury or the judge sitting without a jury as in the case of an ordinary witness. Leonard v. Smith, Tex.Civ.App., 186 S.W.2d 284; New St. Anthony Hotel Co. v. Pryor, Tex. Civ.App., 132 S.W.2d 620." United States Fidelity & Guaranty Co. v. Carr, Tex.Civ. App., 242 S.W.2d 224, 229, wr. ref.

Appellant's motion for rehearing is overruled.