Eddie C. FLORA et ux., Appellants,

v.

Charles B. SCOTT, Appellee.

No. 16596.

Court of Civil Appeals of Texas.

Dallas.

Sept. 24, 1965.

Fred H. Benners, Matthews, Payne, Pace, Sands & Benners, Dallas, for appellants.

John Louis Shook, John D. Crawford, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

DIXON, Chief Justice.

Appellants Eddie C. Flora and wife Ann Flora brought suit against appellee Charles B. Scott for damages for alleged personal injuries to Ann Flora resulting from an automobile collision at a street intersection. Mrs. Flora was driving one vehicle, appellee Scott the other.

A jury returned a verdict finding appellee Scott guilty of negligence and proximate cause in several particulars. As to contributory negligence and proximate cause all issues were answered in favor of appellants except Issues Nos. 8 and 8A where answers adverse to appellants were made in regard to proper lookout and proximate cause. In answering the damage issues the jury found no damages by reason of physical pain, mental suffering, or lost earnings. However, the jury did find past doctors' and medical bills of $500 and $300 respectively and $210 future medical bills.

Based on the jury verdict judgment was rendered that appellants take nothing by their suit.

The trial lasted several days. Only a partial statement of facts was brought up on appeal. It reproduces only ten pages of the evidence adduced during the trial before the jury and thirty-five pages of the evidence on motion for new trial. The original of the deposition of appellants' treating doctor is also included in the record.

Appellants say they were unable to purchase a full statement of the testimony because of the cost of the record, estimated by the court reporter at $800. However, there is no showing that appellants sought to avail themselves of Rules 145, 355 and 380, Texas Rules of Civil Procedure.

In their first point on appeal appellants complain that the trial court refused to comply with Rule 372, T.R.C.P. Appellants tendered eight bills of exception for the court's approval. The judge refused to approve any of them. He returned them to appellants with his refusal endorsed thereon. Thereafter the judge signed seven "Qualified Bills of Exception."

We cannot consider appellants' eight proffered bills of exception which the judge refused to approve. Walden v. Sanger, Tex.Civ.App., 250 S.W.2d 312; Sisk v. Randon, 123 Tex. 326, 70 S.W.2d 689; 4 Tex.Jur.2d 43, § 513. In the absence of bystanders' bills the bills signed by the judge as qualified bills must be accepted by this court. Ray v. Pecos & N. T. Ry. Co., 40 Tex.Civ.App. 99, 88 S.W. 466; Rule 372(j), T.R.C.P.

Appellants assert in their brief that the trial judge violated Rule 372, Sections (h) and (i) by refusing to suggest any corrections in appellants' proffered bills of exception. However, there is no official record before us of the happenings at the hearing on appellants' proffered bills of exception. Therefore the official record is insufficient for us to pass on this alleged violation of Rule 372, Sections (h) and (i). Appellants' first point on appeal is overruled.

In their second point on appeal appellants say that the jury's specific findings in regard to each and every aspect of Mrs. Flora's driving exonerated her from any negligence, thus rendering the finding that she failed to keep a proper lookout without meaning or effect.

In support of their contention appellants cite the holding of our Supreme Court in Barclay v. C. C. Pitts Sand & Gravel Co., Tex., 387 S.W.2d 644. It was there held that an issue on proper control is quite broad and embraces any and every act or omission on the part of a driver which affects his control of the vehicle he is operating. Consequently when all acts and omissions raised by the evidence which affect control of the vehicle are specifically submitted, the more general issue on proper control need not be given. If it is given in that situation the specific findings will control what would otherwise be a conflicting answer to the proper control issue.

Appellants argue that the submission of proper lookout as a contributory negligence issue here is analogous to the submission of proper control in the Barclay case. Their view is that all the elements of proper lookout, a very broad issue, are submitted specifically, namely, right of way, speed (acceleration), brakes (stopping or slowing), turning to right or left (steering wheel) and warning (horn). Therefore there was no need to submit the issue of proper lookout and it had no place in the charge.

We cannot sustain appellants' point for several reasons. (1) They did not object to the submission of the issue on the ground stated in their second point on appeal. (2) In the absence of all but a small portion of the statement of facts we are unable to say whether all the acts and omissions included in proper lookout and raised by the evidence were specifically submitted. The small segment of the testimony presented in the partial statement has nothing to do with the issue of proper lookout. (3) Appellants did not file a motion to disregard the jury findings in answers to Special Issues Nos. 8 and 8A. Rule 301, T.R.C.P.; DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95. Appellants' second point is overruled.

The substance of appellants' third point is that they were denied a fair trial by the court's permitting improper impeachment of Mrs. Flora's treating doctor and her attorney with respect to highly inflammatory, collateral litigation.

The doctor's deposition in answer to written interrogatories was taken at the instance of appellants. He refused to answer a number of cross-interrogatories on the ground that they were irrelevant. The cross-interrogatories which are material to this point inquired whether it was true that the doctor is not allowed to practice in three prominent Dallas hospitals; and whether he had lost a damage suit for $1,000,000 against one of the hospitals in which suit he had been represented by the attorneys who represent appellants in this suit.

Appellants filed a motion *in limine* asking the court to instruct appellee not to refer in any way to the interrogatories which the doctor had refused to answer. Appellants contend that the doctor was entitled to refuse to answer the interrogatories in question because they sought to impeach his credibility by proving particular acts of misconduct, which is not a permissible method of impeachment, citing Compton v. Jay, Tex., 389 S.W.2d 639; Christie v. Brewer, Tex.Civ.App., 374 S.W.2d 908; Tellefsen v. Key System Transit Lines, 158 Cal.App.2d 243, 322 P.2d 469, 67 A.L.R.2d 556, and McCormick & Ray, "Texas Law of Evidence", §§ 655, 690 (2nd Edition).

By way of reply appellee points out that in answer to direct interrogatories the doctor, with reference to his medical qualifications, named various colleges, hospitals, etc., where he had studied and practiced neurological surgery. It is appellee's view that the cross-interrogatories in question are fair rebuttal questions to the above mentioned direct interrogatories. We do not reach this question for decision, for as we shall show hereinafter appellants' third point will be overruled for other reasons.

The court not only overruled appellants' motion *in limine*, but in its order directed that no part of the deposition of the doctor should be allowed in evidence unless and until the witness answered Cross-Interrogatories Nos. 50, 51, 52, 53, 56 and 57. A qualified bill of exceptions signed by the court recites " * * * the court further rules that none" of the doctor's "deposition testimony could be presented to the jury unless * * * Plaintiffs *stipulate* affirmative answers to certain unanswered cross-interrogatories * * *." (Emphasis ours.) The certain unanswered cross-interrogatories are those enumerated above.

We know of no rule which authorizes a court to require a litigant to *stipulate* that

the answers of a deposition witness to unanswered interrogatories would be in the affirmative on pain of having all of the testimony of said witness excluded. It is true that Rule 188(g), T.R.C.P. provides that when a party whose deposition is taken refuses to answer an interrogatory the interrogatory shall be taken as confessed. But the rule applies only to parties to a suit. The doctor is not a party to this suit. Rule 188 does not require even a party to a suit to stipulate that unanswered interrogatories would be answered in the affirmative. In fact, Section (h) of the rule provides that upon trial of the case the party interrogated may take exception to any interrogatory on the ground that it is not pertinent and to the answer that it is not competent evidence. In construing similar statutes in effect prior to the enactment of the present rules it was held that a party's answer would be held to be confessed only with reference to an interrogatory which is pertinent and relevant. Harrison v. Knight, 7 Tex. 47; Barnard v. Blum, 69 Tex. 608, 7 S.W. 98; Hopkins v. Robertson, Tex.Civ.App., 138 S.W.2d 310.

We think that the rule now applicable when a deponent refuses to answer an interrogatory is Rule 215a, T.R.C.P. as amended in 1962.. It applies to parties to a suit and to other deponents. It provides for certain procedures and if a witness persists in refusing to answer after being instructed by the judge to answer, the judge may hold the witness in contempt, or "* * * may make such orders in regard to the refusal as are just * * *." However Rule 215a does not provide, and we do not believe it was intended to mean, that a party may be required on penalty of the exclusion of all a witness' testimony to stipulate an affirmative answer to an unanswered interrogatory, thereby waiving his objections to the admissibility of the interrogatories and answers.

Nevertheless we cannot sustain appellants' third point because the record shows that appellants did elect to stipulate and did agree to affirmative answers to the cross-interrogatories in question and by their stipulation waived their right to object to the ruling of the court.

Appellants say that the stipulation is not binding because they were "coerced" by the trial court into making the stipulation. We are unable to agree. Notwithstanding the pressure put upon them by the court appellants could have, and if they wished to preserve the point for appeal they should have, refused to enter into the stipulation or at least stipulated to the affirmative answers only on condition that they, appellants, retain the right to object at the trial to the admissibility of the cross-interrogatories and the answers on grounds of relevance and competence. Then they could have made objections at the trial to the court's refusal to let them introduce in evidence any part of the doctor's deposition, or to the court's allowing the questioned interrogatories and the answers to them to be read to the jury. Thus the correctness of the court's ruling would be before us for consideration. But in the face of the stipulation and in the absence of any showing that at the trial objections were made to the reading to the jury of the cross-interrogatories and the answers, we must and we do overrule appellants' third point.

In their fourth to eleventh points inclusive appellants assert that they were denied a fair trial because (4) the trial court dined with appellee's counsel in full view of the jury; (5) the court permitted appellee to amend and assert numerous affirmative defenses the day the case was set for trial; (6) the court permitted appellee to put on a rebuttal witness before appellants had completed the presentation of their evidence, the court stating that this was being done so the witness could leave for Las Vegas, Nevada; (7) the court permitted appellee to default on fulfillment of notice and commission to take Dr. Wolf's deposition, then allowed appellee's attorneys to argue to the jury that appellants had not presented any testimony from Dr. Wolf; (8) the court al-

lowed an aerial photograph in evidence with no valid identification; (9) the court instructed the jury that they would be released at a certain time and could plan business trips accordingly, thus causing the jury to act with undue haste in answering the issues; (10) the court instructed the jury that a lawsuit should be fun; and (11) the court improperly communicated with the jury during the jury's deliberations.

We find nothing in the partial record before us which would support a finding that these alleged incidents probably caused the jury to return an improper verdict. Certainly there is nothing in the partial statement of facts which would justify us in holding that the jury, by reason of any one, or a combination of the alleged incidents, was cause to find that Mrs. Flora failed to keep a proper lookout on the occasion of the collision, which finding was the basis for the judgment adverse to appellants. Dennis v. Hulse, Tex., 362 S.W.2d 308; Gordon v. Aetna Casualty & Surety Co., Tex.Civ.App., 351 S.W.2d 602; Lane v. Fair Stores, 150 Tex. 566, 243 S.W.2d 683; Robinson v. Howard County, Tex. Civ.App., 287 S.W.2d 234.

■ As to the fourth point the record discloses that during a recess prior to an evening session the participants in the trial had dinner at the only nearby restaurant which was open for business at the time. In full view of all or most of the members of the jury one of the attorneys for appellee took a seat at a table at which the judge, the bailiff and the court reporter were dining. They were seen to engage in friendly conversation. The restaurant was fairly crowded, but there was room for the attorney to sit elsewhere. Appellants and their attorney sat some distance away.

It is understandable that litigants, seeing their opponent's attorney apparently fraternizing with the judge, might feel that they were at a disadvantage in the trial, no matter how innocent in fact the conduct

complained of may have been. At the hearing on appellants' motion for new trial there was testimony that in the conversation at the judge's table the case on trial was not mentioned. There is no showing that the matter was brought to the judge's attention by an objection made during the trial, or that a motion for mistrial was presented. We cannot say that the jury was probably influenced against appellants by the incident. However, attorneys should be quite circumspect in their relations with a judge during a trial, carefully avoiding the least semblance of personal friendship or familiarity which could possibly be misunderstood by the jury; for, like Caesar's wife, they must not only be innocent of wrongdoing, but their conduct must be above suspicion.

■ As to appellants' fifth point: so far as the record shows appellee was permitted to amend his pleadings on the day the case was set for trial, but the case did not actually go to trial until seven days later. Appellants did not plead surprise or ask for a postponement. Under the circumstances reversible error is not shown. Rule 63, T.R.C.P.; Davis v. Nat'l Acceptance Co., Tex.Civ.App., 233 S.W.2d 321; Miller v. Wagoner, Tex.Civ.App., 356 S.W.2d 363, 367; Wrenn v. Pilgrim, Tex. Civ.App., 360 S.W.2d 420, 423.

■■ As to appellants' sixth and eighth points: we are of the opinion that the court's actions do not constitute error; or, if they do, the partial record before us furnishes no basis for us to hold that it caused an improper verdict or judgment. Dennis v. Hulse, Tex., 362 S.W.2d 308; Robinson v. Howard County, Tex.Civ.App., 287 S.W.2d 234.

■ As to appellants' seventh point: we know of no rule which requires a party to proceed to take a deposition though he may have previously caused notice and a commission to issue. Moreover, appellants elected to continue with the trial notwithstanding the fact that Dr. Wolf's depo-

sition had not been taken. With only a small part of the statement of facts before us we have no basis for holding that improper argument probably caused the rendition of an improper judgment. Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Lehmann v. Krahl, 155 Tex. 270, 285 S.W.2d 179.

■ As to appellants' ninth and tenth points: the record discloses that on Friday afternoon the court addressed these remarks to the jury:

"* * * you may make arrangements to be released sometime Monday. You men that have got these trips, whenever you have finished. Because two of the men have to go on trips, now, by 5:00 o'clock if you haven't reached your verdict, well, we will go right on into the evening. I have got something to do but I will stay with you down here. We want to get the case over and I want to get the men on their way."

    *    *    *    *    *    *

"Remember my instructions to you seriously now. I try to throw a little bit of fun in this. This is serious questions to both of these parties here, and I don't make light of any of their problems here, nor your responsibility nor mine. If we don't have a little fun now and then—I am here at all times. You see, I have to look at these people all the time, especially these lawyers, so I have to don't let it get grim in here if I can keep from it."

We cannot say that the above quoted remarks of the trial judge of themselves standing alone constitute reversible error. Lynn v. Haecker, Tex.Civ.App., 244 S.W.2d 539. In any event, we must say again that in the absence of all but a small portion of the statement of facts we have no basis for holding that the remarks of the judge probably caused the rendition of an improper judgment.

■ As to appellants' eleventh point: the record shows that on Monday afternoon the bailiff relayed messages from the jury to the judge in regard to the question whether the jury desired a recess or desired to continue their deliberations, or desired to come back the next day. The jury after several such inquiries finished their deliberations about ten or fifteen minutes after the last inquiry. Appellants say that those happenings show that the court was in a hurry—an idea which was conveyed to the jury by the several interruptions by the bailiff.

The conversations between the bailiff and the jury took place through the open door of the jury room, with the jury in the jury room, the bailiff in the court room, not the jury room, and the judge on the bench. These communications took place within the sight and the hearing of the parties, their attorneys and the court without objection from anyone at the time so far as the record shows.

The above incidents show a failure to comply with Rule 285, T.R.C.P. However, under the circumstances they do not justify a reversal of the judgment, since the record does not show that injury probably resulted. Ross v. Tex. Emp. Ins. Ass'n, 153 Tex. 276, 267 S.W.2d 541; Whelan v. State, Tex.Civ.App., 271 S.W.2d 108, 118 (rev. on other grounds, 155 Tex. 14, 282 S.W.2d 378).

All of appellants' points on appeal are overruled.

The judgment of the trial court is affirmed.

## ON REHEARING

■ We were mistaken in our original opinion in our discussion of appellants' second point when we said that appellants did not file a motion to disregard the jury's findings in answers to Special Issues Nos. 8 and 8A. In their motion for judgment and in their motion for new trial

appellants alleged that there was no evidence or that there was insufficient evidence to support the jury's answers to the two issues.

However, we cannot sustain appellants' second point since only a partial statement of facts was brought up on appeal. Only a small portion of the testimony was reproduced. From this fragment we are unable to determine that there was no evidence or that there was insufficient evidence to sustain the jury's answers.

■ With reference to their third point appellants contend that they did object, just as we suggested they should have, to the court's requirement that they stipulate affirmative answers to certain cross-interrogatories which Dr. Weary had refused to answer. The trial court's Qualified Bill of Exceptions No. 1 states:

"That the court further ruled during the trial that none of Dr. Weary's deposition testimony taken by and in behalf of Plaintiffs could be presented to the jury by the Plaintiffs in the trial of Plaintiffs' case unless the witness, Weary, answered certain unanswered cross-interrogatories, namely, Nos. 50, 51, 52, 53, 56 and 57 or that Plaintiffs would stipulate affirmative answers to certain unanswered cross-interrogatories propounded to Dr. Weary by Defendant, all of which rulings and stipulations made by the court and the Plaintiffs were taken down by the court reporter and would be available to the Plaintiffs if a Statement of Facts was ordered by the Plaintiffs but this he has failed to do. Plaintiffs' counsel elected to stipulate answers to certain cross-interrogatories which were unanswered in order that he could admit into evidence answers to direct interrogatories propounded to

and answered by the witness, Dr. Weary.

"That Plaintiffs objected to such rulings by the court and were granted leave 'to have their full bill', including the following grounds for objections, but nevertheless the Plaintiffs elected to stipulate answers to the very questions he was objecting to, * * *."

The record is not clear. The phrase "during the trial" is broad enough to encompass all of the proceedings which form part of a trial from the time of pre-trial hearings, or hearings *in limine* to the overruling of appellants' amended motion for new trial. The partial statement of facts does not include the objections or proceedings which took place "during the trial" at the time Dr. Weary's deposition was read to the jury.

Further, there is no showing that Dr. Weary was unavailable as a witness in person. In other words, it is not shown that appellants would have been compelled to do without Dr. Weary's testimony even if they had declined to stipulate and Dr. Weary's deposition had been excluded entirely.

In any event, our Supreme Court has held that we are required to consider the entire record in determining whether to reverse a judgment because of some error committed in the course of the trial. Dennis v. Hulse, 362 S.W.2d 308, 310. See also Robinson v. Howard County, Tex.Civ.App., 287 S.W.2d 234. Since only a partial statement of facts is before us in this case, it is obviously impossible for us to consider the entire record.

We have carefully considered appellants' motion for rehearing and have concluded that it should be overruled. It is so ordered.

Overruled.